Greg M. Saylin (9648)
J. Derek Kearl (10738)
Sarah A. Hafen (16466)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
GMSaylin@hollandhart.com
JDKearl@hollandhart.com
SAHafen@hollandhart.com

*Attorneys for Plaintiff International Bridge, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| INTERNATIONAL BRIDGE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>VIP PARCEL, LLC, DAVID S. BOGATIN, SNEZHANA BOGATIN, and DOES 1 through 10, inclusive,<br><br>Defendants. | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND REQUEST FOR LEAVE TO AMEND COMPLAINT**<br><br>Case No. 2:23-CV-00695-JNP-DAO<br><br>Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

Plaintiff International Bridge, Inc. ("**Plaintiff**") respectfully submits this Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and Request for Leave to Amend Complaint (the "**Opposition**").

## INTRODUCTION

On October 13, 2023, Defendants VIP Parcel, LLC, David S. Bogatin, and Snezhana Bogatin ("**Defendants**") filed a partial Motion to Dismiss Plaintiff's Complaint ("**Motion**") [ECF No. 13.] on behalf of certain parties and as to certain claims for relief in the complaint

("**Complaint**") filed by plaintiff, International Bridge, Inc., a Utah corporation ("**Plaintiff**"). [Exhibit 1 to ECF No. 1 (State Court Complaint).] The Motion seeks the dismissal of the two individual defendants, David S. Bogatin ("**Mr. Bogatin**") and Snezhana Bogatin ("**Ms. Bogatin**" and collectively with Mr. Bogatin, the "**Bogatins**") on the grounds that the Court allegedly has no personal jurisdiction over them and further that the Complaint fails to adequately allege the alter ego status of Mr. Bogatin and Ms. Bogatin in connection with defendant, VIP Parcel, LLC. The Motion also seeks the dismissal of the second cause of action for Unjust Enrichment against all Defendants. As the Defendants are all represented by the same law firm, the Motion asserts that defendant VIP Parcel, LLC ("**VIP**") will respond to the allegations in the Complaint for breach of contract within 14 days after the resolution of the Motion, unless the Court orders a different time. (Motion at p. 2, footnote 1.)

The deadline for Plaintiff to respond to Defendants' Motion was originally set for November 13, 2023. *See* Fed. R. Civ. P. 6; DUCiv 7-1(a)(4)(A). The Parties stipulated to extend this deadline and filed a Stipulated Motion for Extension of Time to Respond to Motion to Dismiss on November 7, 2023 [ECF No. 18]. The Court entered an Order Granting the Stipulated Motion on November 13, 2023 [ECF No. 19], moving the deadline to December 4, 2023.

On or about November 30, 2023, the Plaintiff approached the Defendants with a proposal by which Plaintiff offered to stipulate to amend the complaint to drop Mr. Bogatin and Ms. Bogatin from the Complaint, without prejudice to Plaintiff's ability to move the Court to amend the Complaint based on the results of Plaintiff's completion of discovery into the appropriateness of piercing the corporate veil, provided that the evidence establishes grounds for imposing individual liability on the Bogatins. (Declaration of Sarah A. Hafen, attached hereto as Exhibit A

("Hafen Decl.") at ¶2.) Pursuant to that discussion, Plaintiff's counsel circulated a proposed Amended Complaint, to which Defense counsel consented on December 1, 2023. Subsequently, Plaintiff's counsel circulated a proposed stipulated motion for leave to amend.

On December 4, 2023, Defense counsel notified Plaintiff that Defendants did not consent to the proposed stipulated motion as drafted because Defendants did not believe there was any basis for veil piercing and/or alter ego discovery. (Hafen Decl. at ¶3.) Plaintiff did agree to provide Plaintiff with an additional week from December 4 to December 11 to file this Opposition (the "Second Extension Stipulation"). On December 5, 2023 this Court granted the Second Extension Stipulation. [ECF No. 24.] (Hafen Decl. at ¶3.)

By this Opposition, Plaintiff seeks leave of the Court to amend the Complaint to dismiss the Bogatins without prejudice to Plaintiff's ability to subsequently move for leave to amend based on the results of Plaintiff's completion of discovery into the appropriateness of piercing the corporate veil and assuming the evidence establishes grounds for imposing individual liability on the Bogatins.

As further argued below, separate and apart from Plaintiff's request for leave to amend the complaint as to the individual defendants, Plaintiff hereby opposes a dismissal of its second claim for relief for unjust enrichment. Plaintiff contends that it has adequately plead a claim for unjust enrichment in the alternative, as it is entitled to do, even if the claims appear to be facially contradictory.

Thus, Plaintiff respectfully moves this Court to (i) deny Defendants' Motion as to the second claim for relief for Unjust Enrichment regarding Plaintiff's claim against VIP, and respectfully (ii) seeks leave to amend the Complaint to dismiss Mr. and Ms. Bogatin, without prejudice, and for an order that Plaintiff may seek discovery against VIP, the Bogatins and

related companies as to the appropriateness of piercing the corporate veil for the purpose of moving to amend the Complaint to add Mr. and Ms. Bogatin back to the Complaint, if the evidence establishes a ground for imposing individual liability on them.

## STATEMENT OF FACTS

A. The Written Service Agreement between Plaintiff and VIP.

On or about October 17, 2019, Plaintiff and Defendant VIP entered into a written Service Agreement ("Agreement") by which Plaintiff agreed to provide shipping services to VIP. The Agreement was for a three (3) year term commencing October 1, 2019. (Complaint at ¶ 11.)

Under the terms of the Agreement, VIP agreed to transmit payment to Plaintiff by making deposits in an ACH account set up through Plaintiff's website. Plaintiff would draw funds directly from Plaintiff's account to cover the previous day's shipping expenses. (Complaint at para. 12.) Under paragraph 11 of the Agreement, Plaintiff and VIP agreed that the Agreement would be governed by the laws of the State of Utah without regard to conflict of law principles, and further agreed to the exclusive jurisdiction and venue of the state or federal courts located in Utah. (Complaint at ¶15.)

VIP became delinquent in its performance under the Agreement and in or about March 1, 2021, failed to timely cure the delinquencies despite notification of same. (Complaint a ¶16.) Likewise, despite Plaintiff's efforts to work with VIP on a workout plan as to the curing of the delinquencies, VIP failed to bring the delinquent payments current. (Complaint at ¶18.) As of August 15, 2023, VIP owed Plaintiff the total sum of $694,907.67 under the Agreement, plus accrued interest at the rate of 1.5% from August 15, 2023 in accordance with paragraph 6.2 of the Agreement. (Complaint at ¶ 22.) The Agreement also provided for the payment of any costs, expenses and attorneys' fees incurred by Plaintiff as a result of VIP's nonperformance of any

obligations imposed on it by the Agreement. (Complaint at ¶ 23.)

B. The Alter Ego Allegations.

Ms. Bogatin is purportedly the sole member and President of VIP, of record. (Declaration of Snezhana Bogatin in Support of Notice of Removal at paragraph 2, which is attached as Exhibit "6" to the Defendants' Motion). Plaintiff is informed and believes that Mr. Bogatin, likewise is an undisclosed owner of VIP, but that based upon his past history of trouble, his name is not used in public filings. Other than Ms. Bogatin, Mr. Bogatin is the only other owner of VIP during the term of this Agreement and during the subsequent workout discussions. (Declaration of Shoshana Grove, attached hereto as Exhibit B ("Grove Decl.") at ¶3".)

Plaintiff is informed and believes that at least during the period of time that VIP began falling delinquent on its account with Plaintiff, the Bogatins were diverting funds from VIP for their own personal use, including to support the business expenses of at least two of the Bogatins' other businesses: Oil Divine, LLC and ExpressFromUs. (Grove Decl. at ¶4.) The Bogatins were operating both Oil Divine, LLC and ExpressFromUs.Com out of the same business location as VIP, which is 111 Buck Road, Unit 1100, Huntingdon Valley, PA 19006. (*See* Hafen Decl. at ¶ 4; Exhibits "1", "2" and "3", which show the pertinent public records for these three companies, VIP, Oil Divine, LLC and ExpressFromUs.Com.)

Plaintiff wishes to conduct discovery into the commingling of assets among the Bogatins personally as well as the assets of their other businesses, including VIP, Oil Divine and ExpressFromUs.Com. This discovery will include the examination of the books and records of VIP, Oil Divine and ExpressFromUs.com as well as the subpoena of bank records, both personal and business, along with the depositions of the Bogatins in order to obtain further information in

support of the allegations that the Bogatins are the alter egos of VIP and thus liable for the business debts of VIP, including the Agreement at issue in this action.

## ARGUMENT

A. The Plaintiff Should Be Given Leave to Amend its Complaint to Dismiss the Individual Defendants, Without Prejudice to Plaintiff's Ability to Move the Court to Amend the Complaint on Completion of Discovery into the Appropriateness of Piercing the Corporate Veil and For an Order Directing Alter Ego Discovery

The filing of an amended complaint is governed by Fed.R.Civ.P. 15(a):

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15a. Grant of leave to amend is within the discretion of the district court, and should be granted unless there is "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Clientron Corp. V. Devon IT, Inc.,* Civil Action No. 13-05634, dated Jan. 5, 2015, 2015 WL 70921 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed. 2d 77 (1971)). Prejudice to the non-moving party "is the touchstone for the denial of an amendment." *Supra,* (citing *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978))). A party opposing amendment "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the …amendments been timely.*" Supra*, (citing *Heyl & Patterson Int'l. Inc. v. F.D. Rich Hous. Of V.I., Inc.* 663 F.2d 419, 426 (3d Cir. 1981)).

This case is early in the litigation stages and thus there is no undue delay or prejudice to Plaintiff's request to amend the Complaint, particularly to drop the individuals, without prejudice to later moving to amend the Complaint based on the results of Plaintiff's completion of discovery into the appropriateness of piercing the corporate veil and assuming the evidence establishes grounds for imposing individual liability on the Bogatins.

VIP is a small company owned and run by two individuals, Ms. Bogatin and Mr. Bogatin. (*See* Grove Decl. at ¶3.) After Plaintiff entered into the Agreement with VIP, it became apparent that VIP was unable to remain current on its payments and during the term of the Agreement incurred numerous late fees and interest. VIP made its last payment on the Agreement in March 2021. There is currently a principal balance of $694,907.67 remaining on the account with interest accruing thereon pursuant to the Agreement. Plaintiff made numerous attempts to work with Defendants on a workout schedule, but no further payments were made on the delinquent account. Complaint at ¶¶ 16 and 22. Plaintiff has discovered that in addition to owning and operating VIP, the Bogatins owned and operated at least two other businesses from the same business address as that used by VIP: 111 Buck Road, Unit 1100, Huntingdon Valley, PA 19006. One of these businesses, Oil Divine, LLC appears to be an on-line beauty supply retail business and the other, ExpressFromUs.Com, appears to be a "freight transportation arrangement" in which Ms. Bogatin is a named executive on public records. (Grove Decl. at ¶4; Hafen Decl. at ¶4, Exhibits "1", "2" and "3".) Based upon Plaintiff's initial investigation, Plaintiff has been informed and believes that both Ms. Bogatin and Mr. Bogatin are owners of at least all three of these companies. Mr. Bogatin remains an undisclosed owner of record. Upon investigation into Mr. Bogatin's past, Plaintiff believes he remains as an undisclosed owner to avoid having to disclose his past history in connection with Defendants' business dealings. (Grove Decl. at ¶3.)

Plaintiff was further informed by Mr. Bogatin that the business at Oil Divine, LLC was really taking off with lots of revenue coming into the business. (Grove Decl. at ¶4.) Plaintiff believes that at this point in time, VIP was no longer adequately capitalized to continue to conduct an ongoing business, particularly with the Bogatins supporting their two competing businesses that were being run out of the same business location as VIP. Thus, with all businesses being run by the same two owners, out of the same business location at a time when the business operations for Oil Divine, LLC had increasing revenue but while payments in connection with the VIP business operations were not being made, it is a reasonable assumption that all three business were not being separately maintained and that the Bogatins were using their control of VIP in an attempt to further their own personal interests and their separate business interests in the other companies owned and operated by the Bogatins out of the same business space. (Grove Decl. at ¶4.) This reasonable inference can be made in light of the fact that the VIP principals consisted of no more than two individuals who owned and operated at least these two other businesses from the same business address as VIP. It is further a reasonable inference that at some point during the term of the Agreement, the separate nature of VIP changed and the Bogatins began operating VIP for their personal benefit, with no separation of identity. This is a fraud upon Plaintiff and Plaintiff should be entitled to conduct at least limited initial discovery regarding these reasonable inferences as to the alter ego issues.

In *Tray, Inc. v. Devon International, Inc., et al.*, Civil Action No. 21-1254 (E.D. Pa. May 3, 2021), 2021 WKL 1734845,[1] one of the cases cited in the Motion at page 15, the *Tray* court

---

[1] Defendants have used Pennsylvania law to review alter ego issues based on the underlaying premise that the laws of the state or other jurisdiction under which a foreign company is organized govern its organization and internal affairs and the liability of its managers, members, and assignees of members. *Wasatch Oil & Gas, LLC v. Edward A. Reott,* 682 Utah Adv. Rep. 50, 2011 UT App 152, which cites to Utah Code Ann. § 48-2c1601(1) and to *Atherton v. FDIC,* 519

found that in determining whether to permit the corporate veil to be pierced, several factors were to be considered including "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." As noted by the Court, the factors were not exhaustive, nor was every element required for a finding of liability, however the situation must present 'an element of injustice or fundamental unfairness.' At footnotes 37 and 39, the Tray Court discussed a related case of *Clientron Corp v. Devon IT, Inc*. Civil Action No. 13-05634, (E.D. Pa. Jan. 5, 2015) 2015 WL 70921. In *Clientron*, after dismissing, without prejudice, the alter-ego claims against a defendant (Bennett) who was an individual officer of the corporation, the Court had ordered the parties to engage in discovery on this issue so that Plaintiff could amend its complaint with "more detailed factual allegations on the alter-ego theory against Bennett individually." Discovery on alter ego was undertaken by Clientron and when Clientron moved to file a Second Amended Complaint adding Bennett, among others, under a corporate veil-piercing theory, the motion was granted over defendants' objections. The Clientron Court found that Clientron' s proposed amendment was not futile and that Clientron had pleaded "factual content" that allowed the court "to draw the reasonable inference" that a number of factors regarding piercing the corporate veil were present thus granting the Motion to Amend.

Thus, in *Trey, Inc. v. Devon* (Motion at page 15), despite the Court's dismissal of the claims against the individual owner for piercing the corporate veil (based on conclusory alter ego allegations), the Court permitted Tray to seek discovery into the appropriateness of piercing the

U.S. 213, 224, 117 S.Ct.656 (1997) ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care."). Plaintiffs are not in disagreement with Defendants' use of Pennsylvania law for the purpose of determining whether alter ego allegations are adequate for pleading purposes or are too conclusory.

corporate veil and ordered that Tray would be permitted to "amend its claims against Dr. Bennett if the evidence establishes a ground for imposing individual liability on him."

In line with these rulings by the court in *Clientron* and *Trey,* this Court is empowered to let Plaintiff seek discovery into the appropriateness of piercing the corporate veil in order to satisfactorily amend its claim against the Bogatins, notwithstanding Plaintiff's initial conclusory allegations of alter ego. Thus, the Court may enter an order amending the Complaint to voluntarily drop the Bogatins as defendants, without prejudice to filing a subsequent motion to amend on the above-stated grounds.

B. Based on VIP's Stipulation as to Jurisdiction and Venue in the Agreement, the Court Would Likewise Have Personal Jurisdiction over the Defendants as Alter Egos of VIP

Separate and apart from Defendants' argument that Plaintiff has failed to adequately plead a claim for piercing the corporate veil, Defendants argue that the Court has no personal jurisdiction over the Bogatins. Plaintiff contends that a personal jurisdiction theory might be raised if there were no actual consent to Utah jurisdiction, under paragraph 11 of the Agreement. However, the facts as alleged in the Complaint at ¶ 8 reveal that VIP in fact consented to Utah's state or federal courts having exclusive jurisdiction over the issues presented in the Agreement. This same consent to jurisdiction would apply to the Bogatins as alter egos of VIP.

Under Section 11 of the Agreement, VIP and Plaintiff agreed that the Agreement would be governed by the laws of the State of Utah without regard to conflict of law principles, and further consented to the exclusive jurisdiction and venue of the state or federal courts located in Utah.

In *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc*., 428 F.3d 921, 926–27 (10th Cir. 2005), the Court found that the difference between a mandatory and permissive forum selection clause is that "[m]andatory forum selection clauses contain clear language showing that

jurisdiction is appropriate only in the designated forum." (Citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 321 (10th Cir.1997) (alteration and internal quotation marks omitted).) "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id.* (internal quotation marks omitted). "U.S. Filter argues that the forum selection clause at issue is permissive because it does not specify a county or tribunal for venue. We reject this argument. In *K & V Scientific,* 314 F.3d at 499, we adopted the majority rule for enforcing forum selection clauses." *Id.* at 927 (citing *K & V Scientific Co. v. BMW*, 314 F.3d 494, 497 (10th Cir. 2002)). "We held that when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory." *Id.* (citing *K & V Scientific,* 314 F.3d at 499). "Where only jurisdiction is specified, we will nonetheless enforce a forum selection clause if there is some additional language indicating the parties' intent to make venue exclusive." *Id*. (citing *K & V Scientific,* 314 F.3d at 499).

Here, the Agreement's forum selection clause did just that – it provided consent of the parties to the "exclusive jurisdiction and venue of the state or federal courts located in Utah." Thus, the Agreement is enforceable against VIP and its alter egos as to jurisdiction and venue. Defendants seem to be suggesting that despite the allegations of alter ego as to the Bogatins, the Bogatins would not be able to take advantage of the stipulated consent to the exclusive personal jurisdiction to the Utah courts.

Defendants have cited to no authority to the contrary on this issue.

C. Plaintiff Has Adequately Plead an Alternative Cause of Action for Unjust Enrichment

Defendants argue that Plaintiff has a remedy at law under the Agreement, which bars the unjust enrichment claim. Plaintiff, however, plead the Unjust Enrichment claim as an alternative claim to Breach of Contract. It is a "general principle that a party may plead claims in the alternative, even if the claims are facially contradictory." *Johnson v. Blendtec, Inc*., 500 F.Supp. 3d 1271, 1293 (2020) (citing *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc*., No. 9-CV-221, 2015 WL 4557573, at *19 (PD. Utah July 28, 2015)); *see also* Fed. R. Civ. P. 8(d)(2). A clam for unjust enrichment can be pleaded in the alternative to a claim for damages at law, even if not expressly labeled by the plaintiff as an alternative. *Id.* at 1293.

Further, a plaintiff "may reference factual allegations that support both a breach of contract and equitable claims." *Id.* (denying defendant's motion to dismiss for failure to expressly plead a claim of unjust *enrichment*, deeming the argument "overly technical," "unpersuasive," and unsupported by "any binding precedent"). Additionally, "[b]ecause a claim should be dismissed only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim, *a district court should not dismiss alternative equitable claims if the existence or applicability of a contract remain in dispute*." *Id*. (citing *AGTC, Inc. v. CoBon Energy LLC,* 447 P.3d 123, 130 (Utah 2019)) (emphasis added).

Defendants have not yet answered the complaint so the position of the Defendants on the "existence" or "applicability" of a contract is not yet on record. Defendants' first argument concerning the existence of the contract was that "*Plaintiff* has asserted" that the agreement is a valid, binding, and enforceable contract so therefore it must be an enforceable contract. (*Emphasis added.)* (Motion at page 17). Defendants' counsel also stated in the Motion that VIP

does not dispute that the Agreement is valid, binding, and enforceable against VIP and Plaintiff. (Motion at page 17). Yet contrary to this self-serving statement, Defendants' counsel stated in the Attorney Planning Meeting Report submitted to the Court on November 20, 2023 [ECF No. 21] that VIP plans to assert counterclaims in this action against Plaintiff and/or others for, inter alia, breach of contract, tortious interference with contractual/business relations, fraud/misrepresentation, conversion, unjust enrichment, and/or other claims. Thus, Defendants' position on the existence of a valid, binding and enforceable contract is defeated by their statements in the Attorney Planning Meeting Report.

Defendants' second argument in favor of dismissal of the Unfair Enrichment Claim is that the Complaint failed to allege any benefit received by the Bogatins under the Agreement, arguing that any benefit under the Agreement would inure to VIP, not the Bogatins. While this argument would be moot following the initial dismissal of the Bogatins from the Complaint, without prejudice, it should be noted the Bogatins, as alter egos of VIP, have received the same substantial benefit as VIP (as set forth in the Complaint at paragraph 32) so this argument has no merit. The same argument holds true for the Defendants' last statement, that "Plaintiff has failed to plead the "what, where, why, and how" the Bogatins allegedly received, accepted and/or retained an improper benefit conferred by Plaintiff." (Motion at page 17.) The Defendants cannot ignore the fact that Plaintiff has alleged that the Bogatins are alter egos of VIP, thus any questions as to the "who, what, where and how" are answered by Plaintiff's allegations as to Bogatins' alter ego status. Plaintiff recognizes that the alter ego allegations in the Complaint were not incorporated in the Second Claim for Relief for Unjust Enrichment. Thus, assuming there will be a new amended complaint that includes a piercing the corporate veil claim and

unjust enrichment as to the Bogatins, Plaintiff will incorporate the alter ego allegations in the Second Claim for Relief.

Defendants' arguments for dismissal of the Unjust Enrichment claims are not meritorious and the Plaintiff requests that the Court deny Defendants' Motion to Dismiss the Unjust Enrichment claim as to VIP.

**CONCLUSION**

Based on the foregoing arguments, Plaintiff respectively requests that the Court deny the Defendants' Motion as to the second claim for relief for Unjust Enrichment as to Plaintiff's claim against VIP, and that the Court grant Plaintiff's request for leave to amend the Complaint as to dismissal of the Bogatins, without prejudice, and order that Plaintiff may seek discovery against VIP, the Bogatins and the related companies as to the appropriateness of piercing the corporate veil for the purpose of moving to amend its Complaint to add the Bogatins back to the Complaint, if the evidence establishes a ground for imposing individual liability on them.

DATED this 11th day of December, 2023.

*/s/ Sarah A. Hafen*
Greg M. Saylin
J. Derek Kearl
Sarah A. Hafen
HOLLAND & HART LLP
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of December, 2023, I caused a true and correct copy of the foregoing to be filed electronically with the Court via the Court's electronic efiling system, CM/ECF, which sent notification of such filing to all counsel of record.

*/s/ Sarah A. Hafen*