Brian E. Lahti, Esq. (16290)
LAHTI HELFGOTT LLC
299 S. Main St., Suite 1300
Salt Lake City, UT 84111
P: 650-390-4075
E: blahti@LHlitigation.com

Vlad Tinovsky, Esq. (pro hac vice)
TINOVSKY LAW FIRM
5 Neshaminy Interplex, Suite 205
Trevose, PA 19053
P: 215-568-6862
E: vtinovsky@tinovskylaw.com

Attorneys for Defendants VIP PARCEL, LLC,
SNEZHANA BOGATIN and DAVID BOGATIN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INTERNATIONAL BRIDGE, INC.<br><br>Plaintiff,<br>v.<br><br>VIP PARCEL, LLC, DAVID S. BOGATIN, SNEZHANA BOGATIN, and DOES 1 through 10 inclusive,<br><br>Defendants. | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT [DKT. 32]**<br><br>Case No. 2:23-cv-00695-DAO<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

Defendants, VIP Parcel, LLC ("VIP"), Snezhana Bogatin ("Mrs. Bogatin"), and David S. Bogatin ("Mr. Bogatin") (collectively, "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's Motion for Leave to Amend Complaint (Dkt. 32) ("Motion"), as follows:

## INTRODUCTION

This is a breach of contract action between Plaintiff and VIP, who are direct competitors

in the online postage services industry. Before VIP had similar USPS contractual rights and discounted rates as Plaintiff, the parties entered into the October 2019 Agreement ("Agreement") whereby VIP would revenue-share with Plaintiff in respect to VIP clients' purchases of discounted postage through VIP's website, vipparcel.com, which was integrated with Plaintiff's postage purchasing back-end system.

The validity and enforceability of the Agreement is undisputed. VIP does not dispute that the Agreement is valid, binding, and enforceable against VIP and Plaintiff. Now that Plaintiff is rightfully dismissing Mr. and Mrs. Bogatin from this action after acknowledging that "its allegations in the Complaint as to Mr. and Mrs. Bogatin's alter ego status in relation to VIP present as too conclusory" (Motion p. 9), the real dispute is about whether Plaintiff or VIP is liable to the other under the Agreement.

While Plaintiff contends that it is owed $694,907.67 under the Agreement for alleged unpaid invoices, VIP contends that, *inter alia*, (i) VIP was overcharged in violation of the Agreement by and therefore owed a refund of more than $1.1 million for printed postage in excess of contractual discounted rates, (ii) Plaintiff improperly reduced VIP's revenue-share percentage in violation of the Agreement, (iii) Plaintiff violated the non-compete provision in Section 18 of the Agreement by, *inter alia*, clandestinely marketing to and diverting VIP clients to become direct clients of Plaintiff by, *inter alia*, surreptitiously embedding QR codes on the printed test labels of VIP clients which directed them to Plaintiff's competing website, and (iv) Plaintiff violated the Agreement by limiting and/or eliminating the agreed-upon postage discounted rates in certain contractually-entitled ZIP codes. Plaintiff's misconduct caused VIP to lose valuable clients and

suffer other harm substantially greater than sums allegedly owed to Plaintiff in the Complaint.[1]

Applicable law, judicial economy, and the interests of justice dictate the resolution of liability as between Plaintiff and VIP first, the ability of any party to pay the judgment second, and lastly, if and only if a judgment has been awarded and remains unpaid, and the creditor-party has demonstrated a factual basis to pursue alter ego liability against others to collect on the unpaid judgment, only then should alter-ego discovery be sought at that time. Attempting to do so in reverse order is premature, especially since the Amended Complaint has no allegations about Mr. or Mrs. Bogatin or any basis to pierce the corporate veil of VIP, will only create discovery disputes about hypothetical issues that may never come to fruition, will needlessly increase the cost and duration of litigation, and will distract from the true contractual dispute in this action.

Instead of addressing the merits of this contract dispute between the proper parties, i.e., Plaintiff and VIP, Plaintiff, while on the one hand dismissing Mr. and Mrs. Bogatin from this action, threatens to engage in baseless, overbroad, harassing and abusive veil-piercing discovery against Mr. Bogatin, the 78-year-old husband of Mrs. Bogatin who is the sole owner and President of VIP, based on scandalous and impertinent matter **<u>from forty (40) years ago</u>** that Plaintiff dredged up **<u>after</u>** commencing this action. These matters are not even before the Court since Mr. and Mrs. Bogatin are being dismissed from this action.

Accordingly, Plaintiff's request to amend its pleading, for the *third* time[2], should be granted

---

[1] This is intended to be a brief, non-comprehensive summary of VIP's anticipated counterclaims and defenses. Defendants reserve their right to assert any and all available counterclaims and defenses, whether or not referenced herein.

[2] Plaintiff's first complaint filed in this federal court on August 18, 2023, at Case No. 2:23-cv-00538-BSJ, contained virtually identical allegations but did not name Mr. or Mrs. Bogatin as a defendant. On August 21, 2023, Plaintiff voluntarily dismissed the federal action and re-filed the complaint in Utah State Court, naming Mr. and Mrs. Bogatin as defendants without sufficient factual basis. Notably, this demonstrates that Plaintiff knew *from the outset* that its claims against Mr. and Mrs. Bogatin were deficient but sued them anyway.

solely to dismiss Mr. and Mrs. Bogatin and the Unjust Enrichment claim from this action, but denied as to all other requested relief including, without limitation, the untimely and improper requests for veil-piercing discovery and a determination of jurisdiction and venue over individuals who are no longer parties to this action.[3]

## ARGUMENT

### A. While Leave to Amend Should Be Granted to Dismiss the Individual Defendants, the Plaintiff's Request to Engage in an Improper and Premature Veil-Piecing Fishing Expedition Should be Denied.

Defendants do not oppose Plaintiff's request for leave to amend its complaint with the version attached to its Motion as Exhibit C. This Amended Complaint contains no allegations against Mr. and Mrs. Bogatin and no basis to pierce the corporate veil of VIP. Therefore, Plaintiff's additional request for discovery, improperly couched as part of its motion to amend under Rule 15, should be denied.

Plaintiff's request for veil-piercing discovery, buttressed only by unsupported conclusory allegations and decades-old scandalous and impertinent personal attacks contained in its Motion ***but not in the proposed Amended Complaint***, is improper and untimely. After eliminating the allegations relating to Mr. and Mrs. Bogatin, there is no basis for "the examination of the books and records of VIP, Oil Divine and ExpressFromUs.com as well as the subpoena of bank records, both personal and business, along with the depositions of Mr. And Mrs. Bogatin to obtain further information in support of the allegations that Mr. and Mrs. Bogatin are the alter egos of VIP and

---

[3] Plaintiff's Motion improperly attempts to interject facts not of record via self-serving declarations, which is improper at this stage of the proceeding. However, if the Court is inclined to consider them, then it should note that these exhibits still do not provide a sufficient factual basis for improper and premature veil-piercing discovery and determination of personal jurisdiction over individuals being dismissed from this action. To the contrary, these exhibits support Defendants' position that VIP is a separate and distinct legal entity whose veil cannot be pierced and that Mr. and Mrs. Bogatin are not proper parties to this action.

thus liable for the business debts of VIP, including the Agreement at issue in this action." (Motion p. 6).

As more fully described herein, Plaintiff's Motion (a) improperly seeks to compel discovery when no discovery has yet commenced and no Rule 16 pre-trial conference has occurred, (b) offers no evidence to support veil-piercing claims or discovery, (c) cites no law suggesting that one person is incapable of owning or operating more than one business, and (d) cites no law stating that conducting separate business operations from the same building or 10,000 square feet premises alone makes the owner an alter ego of its business. Even if Plaintiff's Motion exhibits relating to veil-piercing discovery were considered at this pre-discovery stage (which they should not be), Plaintiff's discovery request is flawed and based on decades-old irrelevant, scandalous, impertinent matter relating to Mr. Bogatin, which would be challenged by proper motion. Even if such improper matters were considered (which they should not be), Plaintiff still would not satisfy its pleading requirements for veil piercing discovery, thus making its requested relief not only improper at this stage but, also, futile. Indeed, Plaintiff would have this Court turn well-established law on its head and allow litigants to take unfettered discovery on a sparingly invoked legal doctrine by merely alleging their belief that it should be so. *See Wedner Unemp. Compensation Case*, 449 Pa. 460, 464, 296 A.2d 792 (Pa. 1972) (stating that, with respect to veil piercing, "any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception").

Plaintiff's reliance on *Clientron Corp v. Devon IT, Inc. et al.* and *Tray v. Devon International Group, Inc. et al.* is misplaced. Ironically, both cases deal with the same group of defendants, i.e., the Devon entities and their owners John Bennett and Nance DiRocco, but in different disputes.

In *Clientron Corp*, the Eastern District of Pennsylvania granted alter ego discovery in January 2015, more than two years *after* the case was filed, *after* the case was consolidated with a related case in which the plaintiff was seeking to enforce a $6 million foreign arbitration award obtained against the defendants after six days of substantive hearings on the merits where defendants fully participated and presented evidence, *after* the $6 million arbitration award remained unpaid and was the subject of collection efforts, *after* summary judgment was ruled upon, and *after* there was evidence of fraud and siphoning of millions in assets to hinder creditors, and *after* plaintiff filed an amended complaint with nineteen factually detailed paragraphs setting forth a valid basis for veil piercing and related discovery.

Likewise, in *Tray*, the Eastern District of Pennsylvania considered egregious claims that appeared clear-cut and free from doubt against the same individual defendants as in *Clientron Corp.* and their affiliated entity. The defendants were being sued for fraud and breach of contract in an apparent scheme to obtain a nearly $7,000,000 payment for the purchase of PPE equipment during the height of the COVID-19 pandemic while never delivering the PPE equipment or refunding the payment for it. Presumably recalling their misconduct to defraud creditors in *Clientron Corp.* and the absence of any bona fide defense to the claims, the Eastern District of Pennsylvania allowed veil-piercing discovery.

Here, the facts are distinguishable from the egregious scenarios in *Clientron Corp.* and *Tray*. Plaintiff has no judgment or award against VIP. Plaintiff cannot even demonstrate it is owed a debt by VIP given VIP's anticipated counterclaims. Only one component of VIP's counterclaims, i.e., the overcharges on contractual discounted postage rates, exceeds $1,100,000 and eclipses Plaintiff's alleged $694,000 claim based on apparently erroneous invoices.

Lastly, Plaintiff's Motion exhibits undermine its requested relief and unreasonable

inferences.[4] Plaintiff contends that Mr. Bogatin is an "undisclosed owner" of VIP without any factual or documentary support and in direct contradiction to the Bogatin affidavit(s) at Dkt. 1-7 at PageID 50-51, which are incorporated herein by reference. Ms. Grove's allegation that Mr. Bogatin is an "undisclosed owner" of VIP, without any factual or documentary support, is insufficient, untrustworthy and must be ignored.

Plaintiff contends that VIP is a small company owned and run by two individuals, Ms. Bogatin and Mr. Bogatin, when Motion Exhibit A-1 states that VIP, *inter alia*, (i) had annual revenue above $7,300,000, (ii) had between twelve (12) and fourteen (14) employees, including a Director of Strategic Alliances, Director of Business Development, a Manager and a West Coast Branch Manager (none of whom were Mr. or Mrs. Bogatin), (iii) opened a business location in Florida in 2017 and another one in California in 2020; (iv) was able to secure credit from an unaffiliated third party, CHTD Company, that renewed UCC financing documents in 2017 and 2019 without issue, demonstrating that VIP had sufficient creditworthiness to do so; and (v) had 10,000 square feet of rental space in Pennsylvania, which clearly is more than is needed for VIP's reported 12-14 employees involved in operating VIP's online business of providing online postage purchase and printing services. Even assuming *arguendo* that Plaintiff is correct (which it is not), it is well established that "all stock in a corporation [being] owned by one person [or even two persons] is not sufficient to pierce the corporate veil in Pennsylvania." *Arrowhead Conveyor Corporation v. Giuseppe's Finer Foods, Inc.*, No. 309 WDA 2019, *8 (Pa. Super. Ct. Mar. 24, 2020); *see also College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360

[4] While Defendants take no position at this time on the accuracy and/or completeness of the Motion exhibits, reference is made to them to demonstrate that Plaintiff's inferences are unreasonable and unsupported, and thus Plaintiff is not entitled to leave to amend or engage in an impermissible veil-piercing fishing expedition.

A.2d 200, 273 (1976).

Motion Exhibit A-3 states that ExpressFromUs, *inter alia*, (i) was owed by Mrs. Bogatin and engaged in the "freight transportation arrangement" and "durable goods" business since at least 2013 from its single location in Huntingdon Valley, PA, and well before VIP was formed in May 2105, (ii) had between five (5) and nine (9) employees, (iii) had different phone numbers than VIP; (iv) was able to secure credit from an unaffiliated third party, Merchant Cash and Capital LLC, from 2013-2015 based on UCC filings without issue, demonstrating that ExpressFromUS had sufficient creditworthiness to do so; and (v) had hundreds of thousands of dollars in annual revenue.

Motion Exhibit A-2 states that Oil Divine, LLC, a beauty products company that operates oildivine.com, was formed in December 2020, months before the Complaint alleges VIP became delinquent on payments in March 2021 (proposed Amended Compl. ¶11). The Grove Declaration (Motion Exhibit B) also states that Oil Divine, while formed after VIP, "was really taking off and that lots of revenue was coming into the business," which demonstrates that Oil Divine did not require funding from VIP.

Notably, these documents support an inference that VIP, ExpressFromUS and Oil Divine are each distinctly separate and solvent entities, with sufficient capitalization at all relevant times, distinctively separate businesses, and not the alter egos of each other or of Mr. or Mrs. Bogatin. They do not support an inference of defrauding creditors, improper siphoning of VIP funds or assets, improper commingling, or any basis to pierce VIP's entity veil. *See Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 42, 669 A.2d 893 (Pa. 1995) (noting factors considered in disregarding corporate form under Pennsylvania law, including "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the

corporate form to perpetuate a fraud"). Plaintiff does not even focus its undercapitalization analysis on the correct timeframe, stating "presently, VIP is no longer adequately capitalized to conduct an ongoing business" (Motion p. 8), when applicable law requires undercapitalization to be analyzed at the time of entity formation (which Plaintiff does not challenge in its moving papers). *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir. 1994) ("Alter ego status cannot be inferred whenever a shareholder withdraws some monies from a corporation without formally declaring a dividend or executing a note even if one of the withdrawals is made while the corporation is insolvent. If it did, every payment to a stockholder during insolvency would justify piercing the corporate veil.") Therefore, Plaintiff's inferences are erroneous, and nothing in Plaintiff's Motion or proposed Amended Complaint supports alter ego claims or an impermissible alter ego fishing expedition. *Glass v. Volkswagen of Am., Inc.*, 172 F. Supp. 2d 743, 744 (D. Md. 2001) ("Discovery, however, cannot simply be a fishing expedition, and absent allegations (made subject to the strictures of Rule 11) that would provide a basis for piercing the corporation veil, plaintiffs are not entitled to such discovery.")*; see also Geometwatch Corp. v. Hall*, Case No. 1:14-cv-60-JNP-PMW (D. Utah Dec 19, 2016) ("Although the scope of discovery under the federal rules is broad, however, parties may not engage in a 'fishing expedition' in an attempt to obtain evidence to support their claims or defenses.'...") (citation omitted); *Grynberg v. Ivanhoe Energy, Inc.*, No. 10-1361, D.C. No. 1:08-CV-02528-WDM-BNB, *38-39 (10th Cir. Jul 12, 2012) (same).

Accordingly, Plaintiff should be permitted to file its Amended Complaint in the form attached to the Motion as Exhibit C, but its request for veil-piercing discovery at this stage is improper, premature and should be denied..

**B. Plaintiff's Request for a Ruling on Jurisdiction and Venue relating to the Individual Defendants Being Dismissed from this Action, and Against Whom there are No Allegations in the Proposed Amended Complaint, is Premature and Improper.**

Plaintiff's Motion improperly attempts to litigate an issue that is not presently before the Court, i.e., the applicability of Utah jurisdiction and venue to Mr. and Mrs. Bogatin being dismissed from this action. The proposed Amended Complaint has no allegations about such individuals or any basis for jurisdiction and venue pertaining to them. This requested ruling, which has no basis in law or civil procedure given the proposed Amended Complaint, is untimely and improper at this stage of the proceeding. *See Macqueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, at *17-18 (D. Del. Dec. 3, 2014) (finding that, as to plaintiff's alter ego theory, "the Court has no real meaningful evidence to suggest the theory would or should apply," and therefore "jurisdictional discovery on the question would be premised on little more than speculation—and speculation is an insufficient basis on which to order such relief").

However, in the unlikely event the Court will consider this issue via this Motion, then Defendants contend that Plaintiff's reliance on *Am. Soda, LLP v. U.S. Filter Wastewater Grp.*, 428 F.3d 921, 924 (10th Cir. 2005), is misplaced. The *Am. Soda* case deals with an appeal to the 10th Circuit of an order of remand of a breach of contract dispute to state court based on a mandatory forum selection clause. The case had one plaintiff and one defendant, both of whom were parties and signatories to the subject contract for the construction of a crystallization system at the plaintiff's mining facility. The case had nothing to do with the alter ego doctrine or the application of a mandatory forum selection clause on non-parties to a contract. *See also Lewis v. Takacs (In re Stone Pine Inv. Banking)*, 21-1423, 21-1431, 21-1439 (10th Cir. Dec 19, 2023) (holding that the alter ego doctrine considers "whether the corporate veil should be pierced to hold Takacs, Bagley, and Jackson [i.e., the owners] individually liable for the Stone Pine entities' debts."). Notably, the *Lewis* court demonstrates the extraordinarily high standard for veil piercing, holding that "[w]hile the Court finds Bagley, Takacs, and Jackson participated in a scheme to transfer

Debtor's assets to other entities and to themselves, those transfers do not rise to the level of ignoring the corporate existence of each entity. Although it is a close call, the Court finds the relevant factors insufficient to support a conclusion Debtor was the alter ego of the individual Defendants." *Id*. at 26-27. Here, Plaintiff has fallen woefully short of meeting this high burden or otherwise demonstrating just cause for its requested relief.

## CONCLUSION

Based on the foregoing, this Court should grant in part Plaintiff's Motion for Leave to Amend Complaint solely to permit the filing of the Amended Complaint in the form attached to the Motion as Exhibit C and deny the remainder of Plaintiff's untimely and improper requests.

RESPECTFULLY SUBMITTED this 4th day of June, 2024.

TINOVSKY LAW FIRM

By: /s/ Vlad Tinovsky
Vlad Tinovsky, Esq. (pro hac vice)

*Attorneys for Defendants VIP PARCEL, LLC, SNEZHANA BOGATIN and DAVID BOGATIN*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint was filed with the Court on this 4th day of June, 2024 and served on all counsel of record by the Court's ECF system and/or electronic mail.

By: /s/ Vlad Tinovsky
Vlad Tinovsky, Esq. (pro hac vice)
*Counsel for Defendants*

Dated: June 4, 2024