Brian E. Lahti, Esq. (16290)
LAHTI HELFGOTT LLC
299 S. Main St., Suite 1300
Salt Lake City, UT 84111
P: 650-390-4075
E: blahti@LHlitigation.com

Vlad Tinovsky, Esq. (pro hac vice)
TINOVSKY LAW FIRM
5 Neshaminy Interplex, Suite 205
Trevose, PA 19053
P: 215-568-6862
E: vtinovsky@tinovskylaw.com

Attorneys for Defendants VIP PARCEL, LLC,
SNEZHANA BOGATIN and DAVID BOGATIN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INTERNATIONAL BRIDGE, INC.<br><br>Plaintiff,<br>v.<br><br>VIP PARCEL, LLC, DAVID S. BOGATIN, SNEZHANA BOGATIN, and DOES 1 through 10 inclusive,<br><br>Defendants. | **DEFENDANT, VIP PARCEL, LLC'S COUNTERCLAIM AGAINST PLAINTIFF, INTERNATIONAL BRIDGE, INC.**<br><br>Case No. 2:23-cv-00695-DAO<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

Defendant, VIP Parcel, LLC ("VIP" or "Counterclaim Plaintiff"), by and through its undersigned counsel, hereby files this Counterclaim against Plaintiff, International Bridge, Inc. ("Plaintiff" or "Counterclaim Defendant"), as follows:

**INTRODUCTION**

This is a breach of contract action between Plaintiff and VIP, who are direct competitors in the online postage services industry. Before VIP had similar USPS contractual rights and

discounted rates as Plaintiff, the parties entered into the October 2019 Service Agreement (i.e., the "Agreement") whereby VIP would revenue share with Plaintiff in respect to VIP clients' purchases of postage through VIP's website, vipparcel.com, which was integrated with Plaintiff's postage purchasing back-end system.

## THE PARTIES

1. Counterclaim Plaintiff is a Pennsylvania limited liability company with a principal place of business located at 111 Buck Road, Suite 1100, Huntingdon Valley, PA 19006.

2. Upon information and belief, Counterclaim Defendant is a Utah corporation with a principal place of business located at 5152 N. Edgewood Drive, Suite 250, Provo, UT 84604.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

4. This Court has personal jurisdiction over Counterclaim Defendant because it is a Utah corporation located within this District.

5. Venue is proper in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b), because this is the division where a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL BACKGROUND

6. In or about October 2019, Counterclaim Plaintiff and Counterclaim Defendant entered into a written Service Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.[1]

7. The Agreement is a valid and binding contract between Counterclaim Plaintiff and

[1] The Agreement has been redacted for confidentiality purposes according to its terms. However, Counterclaim Plaintiff will provide an unredacted version to the Court upon request or as applicable.

Counterclaim Defendant.

8. Counterclaim Plaintiff and Counterclaim Defendant are the only parties to the Agreement.

9. Counterclaim Defendant does not dispute that the Agreement is valid, binding, and enforceable against the Counterclaim Plaintiff and Counterclaim Defendant.

10. At the time of the formation of the Agreement, Counterclaim Defendant did not believe that Snezhana Bogatin, in her individual capacity, was a party to or was legally bound by the Agreement.

11. At the time of the formation of the Agreement, Counterclaim Defendant did not believe that David Bogatin, in his individual capacity, was a party to or was legally bound by the Agreement.

12. The Counterclaim Plaintiff and Counterclaim Defendant agreed that Counterclaim Plaintiff would receive a "revenue share," or guaranteed discount, equal to the difference between the applicable commercial published rates of the United States Postal Service ("USPS") at the time of the Agreement and the agreed-upon discounted pricing thereto as set forth in Exhibit A to the Agreement ("Guaranteed Discounts").

13. This revenue share (i.e., Guaranteed Discounts) ranged anywhere from single to double digit percentages depending on the type of shipping and/or delivery zone.

14. The parties agreed for this revenue share (i.e., Guaranteed Discounts) to remain constant during the term of the Agreement despite changes in applicable USPS postal rates.

15. This revenue share (i.e., Guaranteed Discounts) agreement was memorialized at, *inter alia*, Sections 5.1, 5.2 and Exhibit A of the Agreement.

16. Section 5.1 of the Agreement states that "[p]ricing and/or revenue share are

provided to Shipper as set forth in the attached Exhibit A."

17. Section 5.2 of the Agreement contemplated future postal rate increases.

18. Absent an amendment to the Agreement, which required a writing signed by each party, the revenue share (i.e., Guaranteed Discounts) percentage of Counterclaim Plaintiff remained the same irrespective of any USPS postal rate changes.

19. The Agreement provided for Counterclaim Plaintiff to have the revenue share, i.e., Guaranteed Discounts, for all the postal services categories and zones set forth on Exhibit A during the entire term of the Agreement.

20. However, Counterclaim Defendant failed to provide the required revenue share / Guaranteed Discounts in violation of the Agreement.

21. Counterclaim Defendant, unilaterally and without prior notice to and/or consent from Counterclaim Plaintiff, reduced and/or eliminated Counterclaim Plaintiff's revenue share / Guaranteed Discounts below the agreed-upon levels set forth in, and in violation of, the Agreement.

22. Counterclaim Defendant, unilaterally and without prior notice to and/or consent from Counterclaim Plaintiff, also failed to charge Counterclaim Plaintiff and its clients/shippers at the agreed-upon rates in violation of the Agreement.

23. Section 5.2 of the Agreement requires that Counterclaim Defendant "notify Shipper [i.e., Counterclaim Plaintiff] with at least 30 days notice prior to any rate increase."

24. Section 14 of the Agreement provides that the notices under Section 5.2 must be in writing and provided in a certain manner, as follows:

**14. Notices**

All notices, reports, requests, approvals and other communications required or permitted under this Agreement must be in writing and must be provided by (i) personal delivery, (ii) confirmed fax, (iii) overnight courier with written verification of receipt, or (iv) registered or certified U.S. Mail, return receipt requested, postage prepaid. (v) via email to Bridge representative with acknowledgement receipt. All such communications must be sent to an authorized representative of Bridge at the receiving party's address set forth at the beginning of this Agreement or to such other address as the receiving party may provide for purpose of notice.

25. However, Counterclaim Defendant failed to give Counterclaim Plaintiff the required notices of rate changes in violation of, *inter alia*, Sections 5.2 and/or 14 of the Agreement.

26. Upon information and belief, Counterclaim Defendant knowingly and clandestinely overcharged Counterclaim Plaintiff in violation of the Agreement in excess of the agreed-upon pricing / revenue share / Guaranteed Discounts under the Agreement.

27. Upon information and belief, Counterclaim Defendant knowingly and clandestinely prepared inflated invoices, submitted them for payment to Counterclaim Plaintiff, and collected overpayment from Counterclaim Plaintiff on such invoices, in violation of the Agreement, including Exhibit A thereof.

28. Upon information and belief, Counterclaim Defendant knowingly and improperly applied interest to inflated invoices to further collect overpayments from Counterclaim Plaintiff in violation of the Agreement.

29. Upon information and belief, Counterclaim Defendant intended to, and did in fact, overbill and collect monies not owed to Counterclaim Defendant in violation of the Agreement.

30. Upon information and belief, Counterclaim Defendant received discounts or refunds from USPS on estimated shipping overages under the Agreement, which should have been returned or paid over to Counterclaim Defendant but were not, in violation of the Agreement.

31. Counterclaim Defendant has disabled Counterclaim Plaintiff's online access to its myib.com account, which has prevented Counterclaim Plaintiff from fully calculating its damages caused by Counterclaim Defendant's breaches of the Agreement.

32. Section 12 of the Agreement, titled Indemnification Obligation, provides, in relevant part, that:

**12.** Indemnification Obligation

Each party will indemnify, defend, and hold the other harmless from and against any and all liabilities, damages, losses, claims, costs, and expenses (including attorneys' fees) arising out of or resulting from (i) the failure of that party or any third party processor hired by or supervised by that party to observe the restrictions set forth herein; (ii) any claim alleging that the party violated the legal rights of another person; or (iii) any breach of this Agreement or nonperformance of any obligations imposed on it by this Agreement. In the event of any third party action, suit, proceeding or investigation for which indemnification is sought (the "Proceeding"), the other party shall promptly notify the indemnifying party, provided that any failure to so notify the indemnifying party will not relieve the indemnifying party from any liability or obligation which it may have to any indemnified person except to the extent of any material prejudice to the indemnifying party resulting from such failure. If any such Proceeding is brought against an indemnified person, the indemnifying party will be entitled to assume and control the defense thereof, with the indemnified person obligated to cooperate in the defense at the indemnifying party's expense. The foregoing indemnification shall not apply to the extent that any action by the indemnified party gives rise to or otherwise enhances any such claim.

33. As a result of its breaches of the Agreement, Counterclaim Plaintiff is entitled to indemnification from Counterclaim Defendant.

34. Counterclaim Defendant's failure to indemnify Counterclaim Plaintiff is a violation of the Agreement.

35. Section 18 of the Agreement, titled Non-Compete, provides, in relevant part, that:

**18. Non-Compete**

During the term of this relationship Bridge and VIPParcel agrees to not enter into an agreement with a Shipper where either party has a pre-established relationship. Both parties agree to notify via writing any solicitation of services from shippers where Bridge or VIPParcel own a relationship. The cooling off period of this clause will be for a period of five (5) years as referenced in section 10 of the agreement.

36. Counterclaim Plaintiff's website, vipparcel.com, was set up to allow Counterclaim Plaintiff and its clients/shippers to purchase postage using vipparcel.com through an API integration with Counterclaim Defendant's website, mybi.com.

37. This API integration allowed Counterclaim Defendant to view the names, addresses, phone numbers, and other information of Counterclaim Plaintiff's clients/shippers that purchased postage under the Agreement.

38. Upon information and belief, Counterclaim Defendant violated the non-compete provision in Section 18 of the Agreement by, *inter alia*, (a) clandestinely soliciting, marketing to, and/or diverting VIP clients/shippers to become direct clients/shippers of Counterclaim Defendant,

(b) surreptitiously embedding QR codes and/or their name on test shipping labels of Counterclaim Plaintiff's clients/shippers, and (c) surreptitiously embedding their name on actual shipping label in the area provided for a USPS permit number. See Exhibit B, which are true and correct copies of two exemplar labels evidencing the foregoing.

39. Counterclaim Defendant's misconduct caused VIP to lose valuable clients and suffer other harm substantially greater than sums allegedly owed to Counterclaim Defendant as alleged in the Complaint, while simultaneously having the effect of enriching Counterclaim Defendant at VIP's expense.

**COUNT I**
**BREACH OF CONTRACT**

40. Counterclaim Plaintiff incorporates by reference the foregoing paragraphs of this Counterclaim as if set forth fully herein.

41. The foregoing conduct by Counterclaim Defendant constitutes a breach of the parties' Agreement, including, without limitation, as follows:

a. Failing to provide the pricing / revenue share / Guaranteed Discounts due and owing to Counterclaim Plaintiff;

b. Unilaterally and improperly reducing Counterclaim Plaintiff's pricing / revenue share / Guaranteed Discounts under the Agreement;

c. Failing to return or refund overcharges or overpayments to Counterclaim Plaintiff;

d. Preparing, issuing, and collecting on knowingly false and inflated invoices issued to Counterclaim Plaintiff in violation of the Agreement;

e. Failing to provide Counterclaim Plaintiff required notice of rate changes;

f. Failing to indemnify Counterclaim Plaintiff for Counterclaim Defendant's breaches of the Agreement; and

g. Marketing to, soliciting, and/or diverting Counterclaim Plaintiff's clients/shippers in violation of the non-compete clause.

42. As a consequence of the foregoing, Counterclaim Plaintiff has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, which include, but are not limited to, loss of valuable business and opportunities, loss of profits and future profits, and/or loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Counterclaim.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff demands judgment in its favor and against Counterclaim Defendant in the amount to be determined at trial, which is in excess of $75,000, plus costs, interest, and such other relief as the Court deems equitable, just and proper.

RESPECTFULLY SUBMITTED this 21th day of August, 2024.

TINOVSKY LAW FIRM

By: /s/ Vlad Tinovsky
Vlad Tinovsky, Esq. (pro hac vice)

*Attorneys for Defendant/Counterclaim Plaintiff VIP PARCEL, LLC*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the foregoing Counterclaim was filed with the Court on this 21th day of August, 2024 and served on all counsel of record by the Court's ECF system and/or electronic mail.

By: /s/ Vlad Tinovsky
Vlad Tinovsky, Esq. (pro hac vice)
*Attorney for Defendant/Counterclaim Plaintiff VIP PARCEL, LLC*

Dated: August 21, 2024

# EXHIBIT A

## Service Agreement

This International Bridge, Inc. Service Agreement ("Agreement") is by and between VIPParcel ("Shipper") whose principal place of business at 111 Buck Rd, Suite 1100,Huntingdon Valley, PA and International Bridge, Inc. ("Bridge") located at 5152 Edgewood Drive, Suite 250, Provo, Utah. The parties hereto agree as follows:

**1. Terms and Minimums**

The term of this Agreement is for a period commencing on 10/14/2019 and continuing for three (3) years (the "Shipping Term"). This Agreement is effective within five (5) business days following the date by which the Agreement has been signed by an authorized representative of both parties hereto. The Shipping Term shall automatically renew each year as long as Shipper is in good standing with Bridge terms and conditions and Shipper meets or exceeds the volume ("minimum") of [redacted] parcels per month. Parcels counting towards minimum include First-Class and Priority Mail for both domestic and Global Direct Entry Services. Minimum is calculated after a [redacted] day ramp period from start of agreement and is on a rolling month to month basis. Either party may for any reason terminate this Agreement upon ninety (90) days written notice to the other.

**2. Services Provided by Bridge**

During the Term and any continuation thereafter, Bridge will provide the services to Shipper outlined in Exhibit A.

**3. Technology**

3.1 Shipper agrees that rate access will be made by using International Bridge technology including API's for the duration of business agreement. This mandates usage of Bridge's ePostage technology.

3.2 Shipper understands that access to rates and agreed upon margin shared will only be applied to parcels manifested under Bridge technology.

**4. Package Specifications**

4.1 In no event shall packages fall outside of the following USPS specifications or stated specifications in Exhibit A.

- Minimum 4"x6"x1/4"
- Maximum 130 inches combined length and girth
- Over 70 pounds

4.2 Shipper and any Shipper clients are responsible for all applicable label postal specification needed for correct final delivery by the USPS. Bridge will provide information and an API that will be used.

4.3 The packaging materials and methods used with respect to Shipper's packages must be appropriate for the materials shipped to facilitate safe transportation with ordinary care in handling in accordance with USPS regulations then in effect.

4.4 Shipper or Shipper clients shall not tender to USPS any packages which are prohibited by law or regulation, or any hazardous materials, dangerous goods or other items which are subject to regulation by Title 49 of the U.S. Code of Federal Regulations.

4.5 Shipper will be responsible for tender to the USPS for shipments covered under Exhibit A of this agreement.

**5. Pricing / Increases**

5.1 Pricing and/or revenue share are provided to Shipper as set forth in the attached Exhibit A

5.2 Pricing will change in conjunction with any increases from the USPS. Bridge will notify Shipper with at least 30 days notice prior to any rate increase. Shipper is responsible for updating pricing in accordance with these changes within the 30 days provided by Bridge.

5.3 During the term of this Agreement, the Rates, may be adjusted per Section 5 or as amended, Bridge shall also review and discuss any needed Shipper rate increases each year over the prior year's Rates.

5.4 Bridge will pass through all costs/penalties due to Shipper parcels found out of compliance in the following three (3) areas. (1) Unmanifest Postage. If Shipper fails to send Bridge data, Bridge cannot manifest the postage and USPS may charge Bridge for a unmanifest parcel. (2) Re-Calculated Postage. If a Shipper parcel is mis-inducted to a different post office than agreed upon by Bridge and Shipper, zones may change and postage will be recalculated and additional postage will be charged if postage is short. (3) Sampling and Manifest Discrepancy. If a Shipper parcel weighs more than the manifested weight after sampled by USPS is greater than a certain level, postage for the parcel will be adjusted. For parcels out of compliance via ePostage prints Bridge reserves the right to invoice for any shortfall in revenue.



S.B

International Bridge
Delivering More, Using Less

6. **Payment Terms**

6.1 Shipper will pre-fund an ACH account to cover the cost of postage via ACH option. Deposits can be made via the Bridge website. Once available Bridge will draw funds directly from the customer ACH account to cover previous days shipping expenses.

6.2 In the event payment is delinquent, Bridge will notify the Shipper and the Shipper will have two (2) calendar days to remedy. If not remedied, all amounts not paid within two (2) calendar days of the due date will bear interest at the rate of 1.5% per month (or the highest rate permitted under applicable law, whichever is lower) from the date for a minimum of one (1) month and continue until paid, which interest will be added to the unpaid amount due and owing by Shipper to Bridge.

6.3 If payments are not paid, Bridge may upon written notice to Shipper, Stop all shipping services for Shipper.

7. **Liability for Damaged Packages; Insurance**

7.1 In consideration for the pricing and other terms and conditions stated herein. Shipper agrees to file all claims for lost or damaged shipments directly with the USPS.

8. **Force Majeure**
Neither Shipper nor Bridge shall incur any liability for any delay or failure to perform hereunder due to governmental acts, strikes, utility disruptions or failures, acts of God or any other cause beyond the reasonable control of Shipper or Bridge. Neither Shipper's nor Bridge's delay or failure to perform due to any such force majeure event shall be construed as a breach of contract and this Agreement shall continue in full force and effect during any such period of interruption.

9. **Binding Effect**
This Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective successors and assigns.

10. **Confidential Information**
The parties acknowledge and agree that, by reason of their relationship under this Agreement, they may each have access to certain confidential information including the business, suppliers, distributor, shipping rates, shipping processes, intellectual property, Shippers and goods or services of the other party. The parties agree that they will not reveal to third parties or use in any way for their own account any such confidential information. The parties also acknowledge that the provisions of this Agreement are also deemed to be confidential to both parties and they will keep the terms of this Agreement (including the Exhibits) confidential, unless disclosure is required by law. In the event of termination of this Agreement, the obligations of this section shall remain in effect for five (5) years after the effective date of termination.

11. **Governing Law**
This Agreement shall be governed by the laws of the State of Utah without regard to conflict of law principles. Shipper and Bridge consent to the exclusive jurisdiction and venue of the state of federal courts located in Utah.

12. Indemnification Obligation
Each party will indemnify, defend, and hold the other harmless from and against any and all liabilities, damages, losses, claims, costs, and expenses (including attorneys' fees) arising out of or resulting from (i) the failure of that party or any third party processor hired by or supervised by that party to observe the restrictions set forth herein; (ii) any claim alleging that the party violated the legal rights of another person; or (iii) any breach of this Agreement or nonperformance of any obligations imposed on it by this Agreement. In the event of any third party action, suit, proceeding or investigation for which indemnification is sought (the "Proceeding"), the other party shall promptly notify the indemnifying party, provided that any failure to so notify the indemnifying party will not relieve the indemnifying party from any liability or obligation which it may have to any indemnified person except to the extent of any material prejudice to the indemnifying party resulting from such failure. If any such Proceeding is brought against an indemnified person, the indemnifying party will be entitled to assume and control the defense thereof, with the indemnified person obligated to cooperate in the defense at the indemnifying party's expense. The foregoing indemnification shall not apply to the extent that any action by the indemnified party gives rise to or otherwise enhances any such claim.

13. **Assignment**
Shipper may assign its rights, interests, and obligations under this Agreement to a subsidiary or an affiliated corporation or other entity, to a successor in a merger or other stock transaction with Shipper or an affiliate, or to the

S.B.

direct or indirect purchase of all or substantially all the assets relating to this Agreement, without the prior written consent of Bridge.

**14. Notices**

All notices, reports, requests, approvals and other communications required or permitted under this Agreement must be in writing and must be provided by (i) personal delivery, (ii) confirmed fax, (iii) overnight courier with written verification of receipt, or (iv) registered or certified U.S. Mail, return receipt requested, postage prepaid. (v) via email to Bridge representative with acknowledgement receipt. All such communications must be sent to an authorized representative of Bridge at the receiving party's address set forth at the beginning of this Agreement or to such other address as the receiving party may provide for purpose of notice.

**15. Waiver**

Any waiver under this Agreement must be in writing and any waiver of one event shall not be construed as a waiver of any other event or events.

**16. Electronic Signature**

This Agreement and all Ancillary Documents may be executed and delivered by facsimile or other electronic signature by any of the parties to any other party and the receiving party may rely on the receipt of such document so executed and delivered by facsimile or other electronic means as if the original had been received.

**17. Entire Agreement**

This Agreement and the Exhibits hereto constitute the entire agreement between Bridge and Shipper. Any prior representations, statements, negotiations and agreements are superseded by this Agreement. No change or modification to this Agreement will be enforceable unless it is in writing and signed by an authorized representative of each party.

**18. Non-Compete**

During the term of this relationship Bridge and VIPParcel agrees to not enter into an agreement with a Shipper where either party has a pre-established relationship. Both parties agree to notify via writing any solicitation of services from shippers where Bridge or VIPParcel own a relationship. The cooling off period of this clause will be for a period of five (5) years as referenced in section 10 of the agreement.

| INTERNATIONAL BRIDGE, INC. | VIP Parcel, LLC |
|---|---|
| Signature: ______________ | Signature: [signature] |
| Name: ______________ | Name: SNEZHANA BOGATIN |
| Title: ______________ Date: ______________ | Title: President Date: 10/17/2018 |

## Exhibit 'A' to Service Agreement

All rates are confidential between Shipper and Bridge.

**Global Direct Entry (GDE) Rates**
**Domestic Priority Rates**

| GDFCP | | | | | | | |
|---|---|---|---|---|---|---|---|
| OZ | Zones | | | | | | |
| | 1 & 2 | Zone 3 | Zone 4 | Zone 5 | Zone 6 | Zone 7 | Zone 8 |
| 1 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 2 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 3 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 4 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 5 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 6 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 7 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 8 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 9 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 10 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 11 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 12 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 13 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 14 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 15 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 15.999 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |

International Bridge
Delivering More, Using Less.

GDPM

| Weight No | L, 1 & 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| 0.5 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 1 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 2 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 3 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 4 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 5 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 6 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 7 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 8 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 9 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 10 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 11 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 12 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 13 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 14 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 15 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 16 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 17 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 18 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 19 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 20 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 21 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 22 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 23 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 24 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 25 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 26 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 27 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 28 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 29 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 30 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 31 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 32 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 33 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 34 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 35 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 36 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 37 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 38 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 39 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 40 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 41 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 42 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 43 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 44 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 45 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 46 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 47 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 48 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 49 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 50 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 51 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 52 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 53 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 54 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 55 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 56 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 57 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 58 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 59 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 60 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 61 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 62 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 63 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 64 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 65 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 66 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 67 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 68 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 69 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 70 | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |

S.B

| Commercial Plus Cubic | L, 1 & 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| 0 - 0.10 Cubic Feet | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 0.10 - 0.20 Cubic Feet | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 0.20 - 0.30 Cubic Feet | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 0.30 - 0.40 Cubic Feet | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| 0.40 - 0.50 Cubic Feet | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |

| | L, 1 & 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Regional Rate Box A | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| Regional Rate Box B | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |

| | |
|---|---|
| Flat-Rate Legal Env. | $ [redacted] |
| Flat-Rate Padded Env. | $ [redacted] |
| Small Flat-Rate Box | $ [redacted] |
| Medium Flat-Rate Box | $ [redacted] |
| General LFRB | $ [redacted] |
| APO/FPO LFRB | $ [redacted] |
| Flat Rate Envelope | [redacted] |

S.B.

International Bridge

# Addendum #1 to Existing Contract

This document is in reference to a contract agreement dated October 14, 2019, between International Bridge Inc. and VIPParcel, LLC.

May it be known that the undersigned parties, for good consideration, do hereby agree to make the following changes and / or additions that are outlined below. These additions shall be made valid as if they are included in the original stated contract.

**Section 6.1 of the Agreement should be modified:**

**6.1 Shipper will be electronically invoiced for postage weekly. Upon receipt of invoice shipper will have 7 days to remit payment.**

.

No other terms or conditions of the above-mentioned contract shall be negated or changed as a result of this here stated addendum.

INTERNATIONAL BRIDGE, INC.

Signature: ______________________

Name: ______________________

Title:________________Date: ____________

VIPParcel, LLC

Signature: [signature]

Name: SNEZHANA BOGATIN

Title: President Date: 10/25/2019

# EXHIBIT B

# F

SAMPLE - DO NOT MAIL!!!!
FIRST-CLASS MAIL
U.S. POSTAGE PAID
INTERNATIONAL BRIDGE, INC.
eVS

## USPS FIRST-CLASS PKG

[redacted]

FL

C018

[redacted]

**USPS TRACKING # eVS**

**9200 1000 0000 0000 9703 01**

International Bridge Blue

Print shipping labels from home
$0 signup fees, $0 monthly fees, $0 surcharges
Scan the QR code to find out more

P

PRIORITY MAIL
U.S. POSTAGE PAID
INTERNATIONAL BRIDGE, INC.
eVS

USPS PRIORITY MAIL

[redacted]

C001

[redacted]

USPS TRACKING # eVS

9205 5902 2158 2753 1002 04